GERALD SINGLETON (SBN 208783)
BRODY A. McBRIDE (SBN 270852)
TRENTON G. LAMERE (SBN 272760)
SINGLETON LAW FIRM, APC
115 West Plaza Street
Solana Beach, CA  92075
Tel:   (760) 697-1330
Fax:   (760) 697-1329
Email:   gerald@SLFfirm.com
         brody@SLFfirm.com
         trenton@SLFfirm.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA STRODE,<br><br>       Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO, NICOLAI RAMOS, WILLIAM KEARNEY II, TANNER SHERMAN, Sheriff's Deputy BROUSSARD, Sheriff's Deputy S. DE LA TORRE, Sheriff's Deputy MORGAN, Sheriff's Deputy STEVENS, Sheriff's Sergeant MICHAEL LAWSON, Sheriff's Sergeant DOUTHITT, Sheriff's Nurse CUARESMA, Sheriff's Nurse CABACUNGAN, CARRIE HOGAN,<br><br>       Defendants. | Case No. **'18CV0670 DMS NLS**<br><br>**COMPLAINT FOR DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

/ / /

/ / /

/ / /

COMPLAINT

# INTRODUCTION

1. On June 2, 2017, Defendant San Diego State University Police Department ("SDSU Police Department") Officer Carrie Hogan ("Hogan") transported Plaintiff Joshua Strode to the San Diego Central Jail for booking on charges of being unable to care for himself while intoxicated in public.

2. Hogan and the San Diego County Sheriff's Department ("Sheriff's Department") deputies who were staffing the jail at the time of Strode's booking, were each aware that Strode had recently suffered a broken clavicle.

3. As Hogan worked to remove the cuffs that joined Strode's wrists behind his back, Sheriff's Department deputies approached and unnecessarily escalated the situation to the point of violence. The deputies threw Strode onto the ground, kneed his torso, punched his face, and shocked him twice with a TASER. Hogan stood by without making any attempt to stop the deputies' assault on Strode. Strode was then forcibly placed in a sobering cell without treatment for his broken bone and the immense pain caused by the assault. As a result, Strode suffered pain and suffering, emotional distress, and permanent physical injury.

4. Strode now sues, pursuant to 42 U.S.C. § 1983 and various state laws, for recovery of damages arising from the excessive force Strode suffered at the hands of Defendants.

# JURISDICTION AND VENUE

5. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367, as Plaintiff asserts causes of action arising under 42 U.S.C. § 1983 and state-law claims related thereto.

6. The Court has personal jurisdiction over Defendants in this action, as each of Defendants were domiciled, or had their principal place of business, in the State of California at the time of the events giving rise to this action.

7. Plaintiff has complied with all California Government Claims Act requirements for asserting state-law causes of action against public entities and

employees, like Defendants. *See* Cal. Gov't Code §§ 900 et seq.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, as the events giving rise to this action occurred in the City of San Diego, California, which is located within the Southern District of California.

## PARTIES

9. Strode is an individual who, at all times relevant hereto, was domiciled in California.

10. Defendant County of San Diego ("County") is a municipal entity duly organized under California law. The San Diego County Sheriff's Department ("Sheriff's Department") is the County's primary law-enforcement agency. The County, by and through the Sheriff's Department, operates the San Diego County Jail ("SDCJ" or "jail").

11. Defendant Nicolai Ramos (#0241) is an individual who, at all times relevant hereto, was domiciled in California, a County employee engaged in the course and scope of his employment as a Sheriff's Department Deputy, and acting under color of state law.

12. Defendant William Kearney II (#0195) is an individual who, at all times relevant hereto, was domiciled in California, a County employee engaged in the course and scope of his employment as a Sheriff's Department Deputy, and acting under color of state law.

13. Defendant Tanner Sherman (#3702) is an individual who, at all times relevant hereto, was domiciled in California, a County employee engaged in the course and scope of his employment as a Sheriff's Department Deputy, and acting under color of state law.

14. Defendant Broussard (#3221) is an individual who, at all times relevant hereto, was domiciled in California, a County employee engaged in the course and scope of his employment as a Sheriff's Department Deputy, and acting under color of state law.

15. Defendant S. De La Torre (#3164) is an individual who, at all times relevant hereto, was domiciled in California, a County employee engaged in the course and scope of his employment as a Sheriff's Department Deputy, and acting under color of state law.

16. Defendant Morgan (#3282) is an individual who, at all times relevant hereto, was domiciled in California, a County employee engaged in the course and scope of his employment as a Sheriff's Department Deputy, and acting under color of state law.

17. Defendant Stevens (#3248) is an individual who, at all times relevant hereto, was domiciled in California, a County employee engaged in the course and scope of his employment as a Sheriff's Department Deputy, and acting under color of state law.

18. Defendants Ramos, Kearney, Sherman, Broussard, De La Torre, Morgan, and Stevens are sometimes referred to collectively as the "Deputy Defendants."

19. Defendant Michael Lawson (#4029) is an individual who, at all times relevant hereto, was domiciled in California, a County employee engaged in the course and scope of his employment as a Sheriff's Department Sergeant, and acting under color of state law.

20. Defendant Douthitt (#4243) is an individual who, at all times relevant hereto, was domiciled in California, a County employee engaged in the course and scope of his employment as a Sheriff's Department Sergeant, and acting under color of state law.

21. Defendants Lawson and Douthitt are sometimes referred to collectively as the "Sergeant Defendants."

22. Defendant Cuaresma (#5561) is an individual who, at all times relevant hereto, was domiciled in California, a County employee engaged in the course and scope of her employment as a Sheriff's Department Nurse, and acting under color of state law.

23. Defendant Cabacungan (#9466) is an individual who, at all times relevant

hereto, was domiciled in California, a County employee engaged in the course and scope of her employment as a Sheriff's Department Nurse, and acting under color of state law.

24. Defendants Cuaresma and Cabacungan are sometimes referred to collectively as the "Nurse Defendants."

25. Defendant Carrie Hogan (#2505) is an individual who, at all times relevant hereto, was domiciled in California, a SDSU Police Department employee engaged in the course and scope of her employment as a SDSU Police Department Officer, and acting under color of state law.

## FACTS

26. In the late afternoon of June 2, 2017, SDSU Police Department Officer Hogan helped arrest Strode on charges of being unable to care for himself while intoxicated in public (Cal. Penal Code § 647(f)). Thus, when Hogan transported Strode to the San Diego Central Jail for booking, he was a pretrial detainee. Hogan knew, moreover, that Strode had recently suffered a broken clavicle, was in pain, and was prescribed the use of prescription pain medication and an arm sling.

27. Strode arrived at SDCJ at around 4:30 p.m. Once Strode was out of the patrol car and in the jail's sally port, Officer Hogan briefed jail staff on Strode's condition—including that she thought Strode was unable to care for himself and that he had a fractured clavicle. As Strode struggled to keep up his falling pants without a belt, and Hogan tried to remove Strode's handcuffs, Defendant Sheriff's Department Deputy Ramos entered the sally port.

28. Ramos grabbed Strode's arm for no apparent reason. When Strode turned to see who was grabbing him, Ramos–without warning–grabbed Strode's neck and threw him to the ground, causing Strode's head and neck to strike a nearby wall.

29. Defendants Sheriff's Department Deputies Kearney, Sherman, Broussard, and De La Torre arrived soon after Ramos. As Strode attempted to protect himself and protect his broken clavicle, Kearney repeatedly kneed Strode's torso and punched Strode's face. Ramos continued his assault, as well, kneeing Strode's torso, punching

him in the face, and shocking him twice with a TASER. Sherman, Broussard, and De La Torre applied their bodyweight to Strode, assisting Kearney and Ramos in reapplying handcuffs. Neither Sherman, Broussard, nor De La Torre attempted to stop Ramos and Kearney as they assaulted Strode. Hogan stood by, doing nothing to halt the assault. In short, no one showed any concern for Strode's intoxicated state and broken clavicle.

30. Once Strode was strapped to a gurney, he was taken to Nurses Cuaresma and Cabacungan for "medical clearance." Notwithstanding the assault Strode had just endured, which caused extreme pain and permanent injury to his clavicle, Nurses Cuaresma and Cabacungan cleared Strode for placement in a sobering cell with no pain medication and no support for his broken clavicle. In doing so, these nurses acted with deliberate indifference to Strode's serious medical needs.

31. Ramos, Kearney, Sherman, Morgan, and Stevens placed Strode in a sobering cell. Again, despite Strode's injuries, these deputies pushed Strode into a prone position with his hands cuffed behind his back, further exacerbating his pain and injury. Even though Strode remained motionless, Deputy Kearney used his bodyweight to press down on Strode with an electric shield. In addition to applying this additional, excessive force, each of these deputies acted with deliberate indifference to Strode's serious medical needs.

32. Finally, even though Defendants Sheriff's Department Sergeants Michael Lawson and Douthitt were present shortly after the incident began, and were fully aware of their subordinates' actions, neither did anything to stop their subordinates from using excessive force on Strode. Further, Lawson and Douthitt were deliberately indifferent to Strode's serious medical needs.

33. Following the incident, Sheriff's Department personnel alleged Strode had violated California Penal Code sections 69(a) (obstructing/resisting peace officer) and 243(c)(2) (battery against a peace officer). On this basis, prosecutors filed charges against Strode, alleging violations of Penal Code sections 243(c)(2) and 148(a)(1) (resisting/delaying/obstructing peace officer). After reviewing surveillance footage of

the incident, however, prosecutors voluntarily dismissed all charges.

34. The dismissal of Strode's charges was consistent with, and a result of, a policy or custom among San Diego law-enforcement officers and prosecutors, which involves charging individuals who have been subjected to excessive force with trumped up allegations of obstructing/resisting officers. This practice and custom—especially when law-enforcement officers press felony charges—routinely results in loss of liberty, loss of wages, loss of employment, jail and bail costs, and legal fees—on top of the physical injuries, pain and suffering, emotional distress, and medical costs incurred as a result of the excessive force. While law-enforcement officers do not ultimately determine whether to prosecute or dismiss charges, the damage caused by unfounded allegations is done once an individual has been booked by officers—even where, as here, prosecutors ultimately dismiss all charges.

35. As an actual and proximate result of Defendants' actions and omissions, Strode suffered general and specific damages, including pain and suffering, emotional distress, and permanent physical injury.

## FIRST CAUSE OF ACTION

### 42 U.S.C. § 1983 – Excessive Force

### (Against Deputy Defendants, Sergeant Defendants, Hogan)

36. The foregoing paragraphs are incorporated herein by this reference.

37. On June 2, 2017, when Strode arrived at SDCJ, he was believed to be unable to care for himself. SDCJ staff was, moreover, briefed on the fact that Strode had recently suffered a serious injury to his clavicle and was prescribed pain medication and the use of a sling. Even though Strode posed no threat of bodily injury to anyone present when he arrived in the SDCJ sally port, Deputies Ramos, Kearney, Sherman, Broussard, De La Torre, Stevens, and Morgan converged on Strode employed force (both in the sally port and the sobering cell) without legal justification. More specifically, these deputies used, among other things, knee strikes, punches, and electrocution on Strode even though Strode was, at most, attempting to defend himself and protect his clavicle.

To the extent these deputies did not participate in the assault, they failed to make any attempt to stop the assault even though it was reasonably safe for them to do so.  Hogan similarly stood by and did nothing even though it was reasonably safe for her to attempt to stop the assault.  In doing so, these individual defendants violated the Fourth and Fourteenth Amendments' prohibition on the use of excessive force on pretrial detainees.

38. Even though Sergeants Michael Lawson and Douthitt were present throughout the incident, and were fully aware of their subordinates' actions, neither did anything to stop their subordinates from using excessive force on Strode.

39. Throughout the June 2, 2017 incident with Strode, these defendants each acted in the course and scope of their employment with the County and under color of state law.

40. As a direct and foreseeable result of these defendants' actions and omissions during the incident, Strode suffered general and special damages, including pain and suffering, emotional distress, and permanent physical injury.  Strode thus seeks monetary damages to compensate for these injuries, in an amount to be determined at trial.

41. Because these defendants persisted in using and/or failed to stop the excessive use of force on Strode, these defendants recklessly disregarded Strode's Fourteenth Amendment rights.  Accordingly, punitive damages should be assessed against these defendants in an amount that will both punish their conduct and deter such conduct in the future.

## SECOND CAUSE OF ACTION

**42 U.S.C. § 1983 – Deliberate Indifference to Serious Medical Needs**

**(Against Deputy, Nurse, and Sergeant Defendants)**

42. The foregoing paragraphs are incorporated herein by this reference.

43. On June 2, 2017, when he arrived at SDCJ, and especially following the Deputy Defendants' use of force on him, Strode was a pretrial detainee with serious medical needs, including having a recently broken clavicle bone for which Strode was

prescribed prescription pain medication and the use of a sling, in addition to being in immense pain following a severe physical assault.

44. Defendants were each aware of Strode's serious medical needs and consciously disregarded these needs by failing to take reasonable measures to deal with these needs, including by refraining from the use of unnecessary violence and by providing pain relief and orthopedic support for Strode's broken clavicle. In consciously disregarding Strode's serious medical needs, Defendants each violated Strode's rights under the Fourteenth Amendment to be free from deliberate indifference to serious medical needs as a pretrial detainee.

45. As a direct and foreseeable result of these defendants' deliberate indifference to his serious medical needs, Strode suffered general and special damages, including pain and suffering, emotional distress, and permanent physical injury. Strode thus seeks monetary damages to compensate for these injuries, in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

## 42 U.S.C. § 1983 – *Monell*

## (Against County)

46. The foregoing paragraphs are incorporated by this reference.

47. The County is liable for the deprivation of Plaintiff's constitutional rights under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), and its progeny, which hold that a local governing body may be held liable for violations of constitutional rights committed by the entity's employees if the violations arose from, among other things: (a) an official policy or custom among the entity's employees; and/or (b) deliberate indifference to training policies that are inadequate to prevent violations of law by the entity's employees.

48. The County is liable under *Monell*, in that the use of excessive force on, and subsequent charging of, Strode was caused, in substantial part, by a policy or custom among San Diego law-enforcement officers and prosecutors, which involves charging

individuals who have been subjected to excessive force with trumped up allegations of obstructing/resisting officers.  This practice and custom—especially when law-enforcement officers press felony charges—routinely results in loss of liberty, loss of wages, loss of employment, jail and bail costs, and legal fees—on top of the physical injuries, pain and suffering, emotional distress, and medical costs incurred as a result of the excessive force.

49. The use of excessive force on, and subsequent charging of Strode, was also a result of the County's deliberate indifference to a need to train and supervise its law-enforcement personnel to perform their duties within the bounds of the Fourth and Fourteenth Amendments.  This single incident proves such deliberate indifference.  Indeed, the uniformity with which *nine* of the County's employees here acted in reckless disregard of Strode's rights demonstrates both the existence of the policy or custom described above, and a serious need for adequate training.

50. The policy or custom described above, along with the County's deliberate indifference to the need for training described above, were moving forces behind the violations of Strode's constitutional rights under the Fourth and Fourteenth Amendments.

51. As a direct and foreseeable result of the foregoing unconstitutional policy or custom, and deliberate indifference to training needs, Strode suffered general and special damages, including pain and suffering, emotional distress, and permanent physical injury.  Strode thus seeks monetary damages to compensate for these injuries, in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

### Cal. Civ. Code § 52.1(b) – Bane Act

### (Against Deputy Defendants and County)

52. The foregoing paragraphs are incorporated herein by this reference.

53. During the June 2, 2017 incident, the Deputy Defendants interfered, through physical coercion (including punching, kneeing, shocking with a TASER), with

Strode's right as a pretrial detainee to be free from the use of excessive force.

54. As a direct and foreseeable result of the Deputy Defendants' actions against Strode, Strode suffered general and special damages, including pain and suffering, emotional distress, and permanent physical injury. Strode thus seeks monetary damages to compensate for these injuries, in an amount to be determined at trial.

55. Moreover, because the Deputy Defendants were acting in the course and scope of their employment as Sheriff's Department Deputies when the foregoing conduct occurred, the County is vicariously liable for the injuries Strode suffered as a result of the Deputy Defendants' tortious conduct. *See* Cal. Gov't Code § 815.2.

## **FIFTH CAUSE OF ACTION**

### **Battery**

### **(Against Deputy Defendants and County)**

56. The foregoing paragraphs are incorporated herein by this reference.

57. In using excessive force on Strode on June 2, 2017, the Deputy Defendants engaged in actions which resulted in unjustified, harmful, and offensive contacts with Strode's person.

58. At no point did Strode consent to any such contact by any of the Deputy Defendants.

59. As a direct and foreseeable result of Deputy Defendants' unjustified, harmful, and offensive contacts with Strode's person, Strode suffered general and special damages, including pain and suffering, emotional distress, and permanent physical injury. Strode thus seeks monetary damages to compensate for these injuries, in an amount to be determined at trial.

60. Moreover, because the Deputy Defendants were acting in the course and scope of their employment as Sheriff's Department Deputies when the foregoing conduct occurred, the County is vicariously liable for the injuries Strode suffered as a result of the Deputy Defendants' tortious conduct. *See* Cal. Gov't Code § 815.2.

///

# SIXTH CAUSE OF ACTION

## Negligence

### (Against Deputy, Nurse, and Sergeant Defendants)

61. The foregoing paragraphs are incorporated herein by this reference.

62. At the time of the incident giving rise to this action, the Deputy, Nurse, and Sergeant Defendants each had a duty of ordinary care in executing their respective duties as Sheriff's Department personnel. The Deputy Defendants, in particular, had a duty to refrain from the use of excessive force on Strode during his pretrial detention, in addition to seeing that Strode received prompt medical care. The Nurse Defendants had a duty to use the skill, knowledge, and care in diagnosis and treatment that other reasonably careful medical providers would use in similar circumstances. The Sergeant Defendants had a duty to undertake reasonable efforts in supervising the Deputy and Nurse Defendants in the performance of their respective duties. All of these defendants had a duty to refrain from being deliberately indifferent to Strode's serious medical needs.

63. The Deputy Defendants breached the foregoing duties on June 2, 2017, when, without legal justification, they used excessive force on Strode and, among other things, failed to consider his broken clavicle. The Nurse Defendants breached the foregoing duties when they failed to provide Strode with any treatment before clearing him for placement in a sobering cell through the use of force. The Sergeant Defendants breached the foregoing duties when they failed to take reasonable steps to supervise the Deputy and Nurse Defendants in the performance of their duties; i.e., the Sergeant Defendants allowed the Deputy Defendants to use excessive force and allowed the Nurse Defendants to medically clear Strode even though it was obvious that Strode had serious medical needs. All of these defendants breached a duty when they were deliberately indifferent to Strode's serious medical needs.

64. As a direct and foreseeable result of these defendants' respective breaches of duty, Strode suffered general and special damages, including pain and suffering,

emotional distress, and permanent physical injury. Strode thus seeks monetary damages to compensate for these injuries, in an amount to be determined at trial.

65. Moreover, because these defendants were acting in the course and scope of their employment as Sheriff's Department personnel when the foregoing negligence occurred, the County is vicariously liable for the injuries Strode suffered as a result of the Deputy Defendants' tortious conduct. *See* Cal. Gov't Code § 815.2.

## SEVENTH CAUSE OF ACTION

### Negligent Training and Supervision

### (Against Sergeant Defendants)

66. The foregoing paragraphs are incorporated by this reference.

67. At the time of the incident giving rise to this action, the Deputy and Nurse Defendants were County employees under the supervision of the Sergeant Defendants.

68. The Deputy and Nurse Defendants were, however, unfit and/or incompetent to perform their work as corrections officers and nurses, respectively.

69. The Sergeant Defendants knew, or should have known, on the day of the incident, that their subordinates were unfit and/or incompetent to perform their work as corrections officers and nurses, respectively, and that this unfitness and/or incompetence created a particular risk to pretrial detainees such as Strode.

70. As a direct and foreseeable result of the Deputy and Nurse Defendants' respective unfitness and/or incompetence, Strode was harmed. That is, as a direct and foreseeable result of the Sergeant Defendants' failure to train and supervise their subordinates, Strode suffered general and special damages, including pain and suffering, emotional distress, and permanent physical injury. Strode thus seeks monetary damages to compensate for these injuries, in an amount to be determined at trial.

71. Moreover, because the Sergeant Defendants were acting in the course and scope of their employment as Sheriff's Department personnel when the foregoing negligence occurred, the County is vicariously liable for the injuries Strode suffered as a result of the Deputy Defendants' tortious conduct. *See* Cal. Gov't Code § 815.2.

## PRAYER FOR RELIEF

72. Based on the foregoing allegations, Plaintiff demands:

    a. that judgment be rendered in favor of Plaintiff and against Defendants on all causes of action asserted herein;

    b. compensatory damages (including economic and non-economic damages) in amounts to be determined at trial;

    c. punitive damages, against the individual defendants to the excessive-force claim only, in an amount sufficient to punish the conduct giving rise to this claim and to deter such conduct in the future;

    d. reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988, Cal. Gov't Code § 52.1(h), and all other relevant statutory and case law; and

    e. any and all other relief in law or equity to which Plaintiff may be entitled and which this Court deems just and proper.

## DEMAND FOR JURY TRIAL

73. Plaintiff demands, under the Seventh Amendment, a trial by jury as to each and every cause of action asserted herein.

Dated: April 3, 2018            SINGLETON LAW FIRM, APC

                                By:   *s/Brody McBride*_____

                                      Brody A. McBride, Esq.

                                Attorneys for Joshua Strode