UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

JOSHUA STRODE,

Plaintiff,

v.

COUNTY OF SAN DIEGO; NICOLAI RAMOS; WILLIAM KEARNEY II; TANNER SHERMAN; sheriff's Deputy S. DE LA TORRE; Sheriff's Deputy MORGAN; Sheriff's Deputy STEVENS; Sheriff's Sergeant MICHAEL LAWSON; Sheriff's Sergeant DOUTHITT; Sheriff's Nurse CUARESMA ; Sheriff's Nurse CABACUNGAN; CARRIE HOGAN,

Defendants.

Case No.: 18cv670-CAB-NLS

**ORDER REGARDING MOTION TO DISMISS FIRST AMENDED COMPLAINT AND STRIKE PARAGRAPHS 40-45, 64 [Doc. No. 29]**

This lawsuit arises out of a use-of-force incident that occurred on June 2, 2017 at the San Diego Central Jail. Pending before the Court is the motion to dismiss the First Amended Complaint ("FAC") and motion to strike paragraphs 40-45 and 64, filed by Defendants County of San Diego, Christian Broussard, Brendale Cabacungan, June Cuaresma, Servando De La Toree, John Douthitt, William Kearney, Michael Lawson,

David Morgan, Nicolai Ramos, Tanner Sherman and Scott Stevens ("Defendants"). [Doc. No. 29.]

PROCEDURAL HISTORY

On April 3, 2018, Plaintiff Joshua Strode ("Plaintiff") brought suit against Defendants alleging seven causes of action. The case was initially assigned to District Judge Dana M. Sabraw. [Doc. No. 1.] Defendants moved to dismiss Plaintiff's claims for Deliberate Indifference to Serious Medical Needs, his *Monell*[1] claims, and his claim for Negligent Training and Supervision against Sergeant Defendants. On October 9, 2018, District Judge Sabraw dismissed, with leave to amend, Plaintiff's Deliberate Indifference to Serious Medical Needs claim and his *Monell* claim for Failure to Train. On October 19, 2018, Plaintiff filed the FAC which no longer included a Deliberate Indifference to Serious Medical Needs claim, but re-alleged Plaintiff's *Monell* claim for Failure to Train.

On November 2, 2018, Defendants filed a motion to dismiss the FAC and strike certain paragraphs. [Doc. No. 29.] On December 14, 2018, Plaintiff filed an opposition. [Doc. No. 30.] On December 21, 2018, Defendants filed a reply to the opposition. [Doc. No. 31.] On February 5, 2019, the case was transferred to District Judge Cathy Ann Bencivengo. [Doc. No. 32.]

ALLEGATIONS OF THE FAC

On June 2, 2017, Plaintiff was arrested by San Diego State University police officer Carrie Hogan for public intoxication and taken to the San Diego Central Jail. [Doc. No. 27 at ¶¶ 1, 26.] Plaintiff alleges that upon exiting the patrol car and entering the sally port at the jail, Officer Hogan briefed unspecified "jail staff" on Plaintiff's condition including that he was unable to take care of himself and had a fractured

---

[1] *Monell v. Dept. of Soc. Serv.*, 436 U.S. 658, 694 (1978).

clavicle. [Doc. No. 27 at ¶ 27.] When Officer Hogan went to remove Plaintiff's handcuffs, it was at that point that Deputy Ramos first entered the sally port. *Id.*

Plaintiff further alleges that Deputy Ramos took hold of Plaintiff's arm and when Plaintiff turned, Deputy Ramos "threw him" to the ground and he hit a nearby wall. [Doc. No. 27 at ¶ 28.] Other deputies then entered the sally port to assist Deputy Ramos including Deputies Kearney, Sherman, Broussard, and De La Torre. [Doc. No. 27 at ¶ 29.] Sergeants Lawson and Douthitt entered the sally port at some point after the incident between Plaintiff and Deputy Ramos began. [Doc. No. 27 at ¶ 33.] Deputies Ramos and Kearney kneed, punched, and tased him. [Doc. No. 27 at ¶ 29.] After Plaintiff was restrained, deputies took him to be seen by Nurses Cuaresma and Cabacungan. [Doc. No. 27 at ¶ 30.] Once the nurses examined and cleared him, he was placed in a sobering cell by Deputies Ramos, Kearney, Sherman, Morgan, and Stevens. [Doc. No. 27 at ¶¶ 31, 32.] Deputies placed Plaintiff in the cell in a prone position with his arms behind his back and Deputy Kearney pressed on Plaintiff using an electric shield. [Doc. No. 27 at ¶ 32.]

Plaintiff alleges that the incident in the sally port is similar to four other incidents. All four incidents are in the patrol context, not the jail context. Two of these alleged incidents were settled by the County of San Diego and one occurred in 2018, after the incident in question. [Doc. No. 27 at ¶¶ 35-39.] Plaintiff also references in-custody deaths and sets forth various statistics set forth in a local newspaper. [Doc. No. 27 at ¶¶ 40-45.]

## DISCUSSION

### A. Legal Standard.

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted"—generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand . . . more than an unadorned, the defendant-unlawfully-

harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the collective facts pled "allow . . . the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). The Court need not accept as true "legal conclusions" contained in the complaint, *id.*, or other "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

Pursuant to Federal Rule of Procedure Rule 12(f), the Court may strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). Motions to strike generally will not be granted unless it is clear that the matter to be stricken could not have any possible bearing on the subject matter of the litigation. *See LeDuc v. Kentucky Central Life Insurance Co.*, 814 F.Supp. 820, 830 (N.D.Cal.1992). Allegations "supplying background or historical material or other matter of an evidentiary nature will not be stricken unless unduly prejudicial to defendant." *Id*. Moreover, allegations which contribute to a full understanding of the complaint as a whole need not be stricken. *See id*.

B. Analysis

One of Plaintiff's claims under *Monell* is that County officials were deliberately indifferent to the need for training, supervision and discipline of its law-enforcement employees and agents. [Doc. No. 27 at 61-65.]

"[A]s to a municipality, 'the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to

the rights of persons with whom the police come into contact.'" *Flores v. County of Los Angeles*, 758 F.3d 1154, 1158 (9th Cir. 2014) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). This means Plaintiff "'must demonstrate a conscious or deliberate choice on the part of a municipality in order to prevail on a failure to train claim.'" *Id.* (quoting *Price v. Sery*, 513 F.3d 962, 973 (9th Cir. 2008)) (internal quotation marks omitted). "Satisfying this standard requires proof that the municipality had actual or constructive notice that a particular omission in their training program will cause municipal employees to violate citizens' constitutional rights." *Kirkpatrick v. Cty. Of Washoe*, 843 F.3d 784, 794 (9th Cir. 2016)(en banc)(internal quotation marks, alterations and citations omitted). In order "to demonstrate that the municipality was on notice of a constitutionally significant gap in its training, it is ordinarily necessary for a plaintiff to demonstrate a pattern of similar constitutional violations by untrained employees." *Id.* (internal quotation marks omitted).

In the original complaint, Plaintiff did not plead any additional instances of misconduct as a result of the County's alleged failure to train its employees. As a result, District Judge Sabraw granted the motion to dismiss that claim, with leave to amend. Now, in the FAC, Plaintiff has alleged four additional instances of misconduct as a result of the County's failure to train its employees. The question for the Court is whether those instances "demonstrate a pattern of similar constitutional violations by untrained employees." *Id.*

"A 'pattern of similar constitutional violations by [similarly situated] employees is ordinarily necessary to demonstrate deliberate indifference.' " *Flores v. Cnty. of Los Angeles*, 759 F.3d 1154, 1159 (9th Cir. 2014) (*quoting Connick*, 131 S. Ct. at 1360). The pattern of violations must be very specific. For example, in *Connick*, the prosecutors concealed a crime lab report in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). *Connick*, 131 S. Ct. at 1358. The state courts had overturned four other convictions from that prosecutor's office for *Brady* violations. *id*. at 1360. But these violations did not put the prosecutor's office on notice that its training was "deficient in a particular respect"

because "[n]one of those cases involved failure to disclose blood evidence, a crime lab report, or physical or scientific evidence of any kind." *id*. Thus, *Connick* indicates that the pattern cannot consist of generic misconduct; rather, it must be a pattern of incidents that closely resemble the underlying misconduct in a particular case. *See also Flores*, 759 F.3d at 1159 (requiring "a pattern of sexual assaults perpetrated by Los Angeles Sheriff's deputies"); *Walker v. City of New York*, 974 F.2d 293, 299-300 (2d Cir. 1992) (requiring a pattern of perjury by police officers).

Here, Plaintiff has alleged four incidents that, while they involve alleged police misconduct, appear to be in different situations from the one alleged here. [Doc. No. 27 at ¶¶ 35 - 38.] First, all four incidents were in the context of officers on patrol, not in the jail context. [*Compare* ¶27 *with* ¶¶ 35-38.] Moreover, two of the incidents were settled and did not result in a determination of liability. [Doc. No. 27 at ¶¶ 36, 37.] Finally, the fourth incident arose after the incident in this case and, therefore, could not have provided the County with notice of an alleged failure to train. [Doc. No. 27 at ¶ 38.] Plaintiff has simply failed to show how these four incidents are "similar" to his situation, and has failed to allege any prior incident, in a jail setting, where Sheriff's deputies were deemed liable for constitutional violations dealing with the use of force.

In addition, Plaintiff sets forth statistics reported in a local newspaper regarding inmate in-custody deaths. [Doc. No. 27 at 40-45, 64.] It is not at all clear, however, what caused those deaths, or how in-custody deaths (including suicide-related deaths) are "similar" to the alleged use-of-force incident involving Plaintiff. Plaintiff has failed to tie those alleged statistics to his own alleged constitutional violation.

Finally, Plaintiff alleges that because nine county employees were involved in this incident, that fact demonstrates the existence of a custom or policy and the need for adequate training. [Doc. No. 27 at ¶62.] However, the fact that multiple officers took part in a single incident (occurring in the same day as part of the same arrest and detention) cannot be considered separate incidents from which one could infer a pattern of violations. *See Dillman v. Tuolumne County*, No. 1:13cv00404 LJO SKO, 2013 WL

3832736 (E.D. Cal., July 23, 2013), at *5 (plaintiff's suggestion that because multiple officers took part in the events of that day there was a pattern of similar violations by the employees failed to satisfy the pattern necessary for a failure to train claim without first satisfying the much more stringent test for single-incident liability). Here, District Judge Sabraw previously ruled that this incident does not meet the standard for single-incident liability [*see* Doc. No. 26 at 7], and the allegation that nine officers were involved does not show a pattern of constitutional violations.

CONCLUSION

For the reasons set forth above, the motion to dismiss the *Monell* claim for failure to train is **GRANTED WITH LEAVE TO AMEND**. This will be Plaintiff's final opportunity to amend the claim. Should Plaintiff wish to amend the claim, he shall file a Second Amended Complaint ("SAC") by **March 1, 2019**. The motion to strike Paragraphs 40-45 and 64 is **GRANTED WITHOUT PREJUDICE** to reasserting them in the SAC if Plaintiff can allege a connection between those statistics and the use-of-force incident involving Plaintiff. If no SAC is filed by March 1, 2019, then Defendants shall answer the FAC, as amended by this Order, by **March 8, 2019**.

**IT IS SO ORDERED**.

Dated: February 11, 2019

Hon. Cathy Ann Bencivengo
United States District Judge